UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
    Plaintiff, )
     )
v. )    C.R. No. 14-93-M
     )
ALLEN PROUT, )
    Defendant. )

## ORDER

Before the Court is Defendant Allen Prout's Motion to Suppress (ECF No. 20) statements he made and inferences to be drawn therefrom, to a confidential informant on June 4, 2014 about a 2012 armed robbery. Mr. Prout argues that the "secret interrogation" violated his Sixth Amendment right to counsel because state charges were pending on the robbery, and he was represented by counsel on those charges. The Government argues that Mr. Prout was not entitled to the presence of counsel during the 2014 conversation because he had not been federally charged for the 2012 armed robbery and the state charge for that same robbery was a separate offense, citing the dual sovereignty doctrine. The Court finds that the First Circuit Court of Appeals decision in *United States v. Coker*, 433 F.3d 39 (1st Cir. 2005) in favor of applying the dual sovereignty doctrine to Sixth Amendment cases represents the controlling law on this issue and weighs in the Government's favor on the facts of this case. Therefore, Mr. Prout's Motion to Suppress is DENIED.

"The Supreme Court has stated that '[t]he Sixth Amendment right [to counsel] ... is offense specific. It cannot be invoked once for all future prosecutions.'" *Coker*, 433 F.3d at 42 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). "In its double jeopardy jurisprudence, the [Supreme] Court has held that a defendant's conduct in violation of two separate sovereigns

('the dual sovereignty doctrine') constitutes two distinct offenses. Thus, under the dual sovereignty doctrine, [the defendant's] federal offense would be considered separate from his state offense for double jeopardy purposes." *Coker*, 433 F.3d at 43 (citing *Heath v. Alabama*, 474 U.S. 82, 87-93 (1985)). But, Mr. Prout's motion is rooted not in the Fifth Amendment, but in the Sixth Amendment. The First Circuit has dealt with this same issue before, however, and determined after examining decisions in other circuits and analyzing United States Supreme Court precedent discussing Fifth and Sixth Amendment jurisprudence, that "the dual sovereignty doctrine applies for the purposes of defining what constitutes the same offense in the Sixth Amendment right to counsel context." *Coker*, 433 F.3d at 44.

The parties stipulated to the fact that the State of Rhode Island charged Mr. Prout for the September 3, 2012 home invasion on October 6, 2012. During the pendency of the state case, Mr. Prout had counsel. Therefore, there is no dispute that his June 4, 2014 statements and any inferences to be drawn therefrom would not have been admissible in the state prosecution. There was no state prosecution because the state charges were dismissed on July 1, 2014. The parties also stipulated that the U.S. Attorney's Office charged Mr. Prout by criminal complaint for the 2012 home invasion on June 13, 2014 and those charges matured into an indictment on July 16, 2014. The question is whether the fact that he was represented by counsel on the state charge at the time of the June 4, 2014 statement extended to the eventual federal charge filed on June 13, 2014, making that statement inadmissible in the federal case. The answer is no. Simply, the dual sovereignty doctrine applies to Mr. Prout's Sixth Amendment argument, the federal offense that he was eventually charged with was a separate offense from the state robbery charge pending at the time he spoke to the confidential informant by virtue of the fact that the conduct charged was in violation of two different sovereigns, and thus his statement to the confidential

2

informant before he was charged federally was not taken in violation of his constitutional right to counsel.

Lest there be a concern that a rigid application of the dual sovereignty doctrine would allow law enforcement of different sovereigns to manipulate the right to counsel and would contribute to unconstitutional interrogations, there is an exception to the dual sovereignty doctrine that is accepted in this Circuit. The separate sovereign-separate offense concept does not apply to Sixth Amendment scenarios where "one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *United States v. Guzmán*, 85 F.3d 823, 827 (1st Cir. 1996). Practically, this means that "if it appears that one sovereign is controlling the prosecution of another merely to circumvent the defendant's Sixth Amendment right to counsel, under the *Bartkus* [*v. Illinois*, 359 U.S. 121 (1959)] exception the dual sovereignty doctrine will not apply." *Coker*, 433 F.3d at 45. "[A] defendant arguing for the exception to the dual sovereignty doctrine 'must proffer evidence sufficient to establish a prima facie case that the two prosecutions were for the same offense.'" *Id.* In other words, a defendant "must produce some evidence tending to prove that ... one sovereign was a pawn of the other, with the result that the notion of two supposedly independent prosecutions is merely a sham." *Id.* at 46 (quoting *Guzmán*, 85 F.3d at 827).

Mr. Prout invokes this exception to no avail as he has failed in his burden to show that the state investigation and prosecution was a pawn for the federal one. Based on the testimony of Special Agent Edward Troiano of the Bureau of Alcohol, Tobacco, and Firearms (ATF), it is clear to the Court that the investigation of the 2012 robbery was a joint operation with different responsibilities shared between state and federal law enforcement depending on who was best able to execute on those responsibilities. For example, Mr. Prout raised the fact that ATF acted

3

alone in executing and tracking all of the cell phones relevant to the investigation. Agent Troiano testified that it is procedurally easier for federal agents to get search warrants than for the state to get them, especially for phones. He also testified that although ATF initiated the federal search warrants, the affidavits in support of those warrants were based in large part on the West Warwick Police Department (WWPD) information. Other law enforcement also contributed to the investigation. Providence Police drafted and executed another warrant at 132 Oakland Avenue on September 21, 2012, presumably because the house was in Providence.

Furthermore, WWPD executed other critical parts of the investigation with which Agent Troiano was not involved. WWPD initiated the investigation of the 2012 robbery, presumably because it happened in its jurisdiction. The investigation led Captain Lavigne of WWPD to obtain an arrest warrant to Mr. Prout's co-defendant, Kiplagatt Stewart, who was a suspect in the robbery. Captain Lavigne learned of Mr. Stewart's involvement in the robbery through his contact with Jennifer Tierney, whose cell phone was used to contact Mr. Stewart. Only after he had the warrant for Mr. Stewart did Captain Lavigne contact Special Agent Edward Troiano because he knew that Agent Troiano was familiar with Mr. Stewart through past investigations. While federal agents and Rhode Island State Police Fugitive Task Force members executed the September 7, 2012 arrest warrant at 132 Oakland Avenue, Agent Troiano invited WWPD officers to be there. WWPD interviewed Mr. Stewart, without federal presence, after his arrest. The Agent and WWPD were in contact frequently, updating each other on the progress of the investigation. Agent Troiano, Captain Lavigne, Detective Ianitti conducted several in person interviews together. WWPD obtained the arrest warrant for Mr. Prout and were present when it was executed. Mr. Prout was taken to WWPD after his arrest. Based on the credible testimony

4

of Agent Troiano, the Court does not find that the WWPD investigation was a pawn for the ATF's work.

Based on the record before the Court, the "facts show nothing more than the rendering of routine intergovernmental assistance." *Guzmán*, 85 F.3d at 828. Because "[c]ooperative law enforcement efforts between independent sovereigns are commendable, * * * such efforts will not furnish a legally adequate basis for invoking the ... exception to the dual sovereign rule." *Id.* As such, the dual sovereign doctrine prevails, and the Court DENIES Mr. Prout's Motion to Suppress.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

April 9, 2015